UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES KENNEDY, JR.,

                              Petitioner,

          -vs-                          **No. 1:12-CV-0655(MAT)**
                                        **DECISION AND ORDER**
D.E. LACLAIRE, Superintendent,

                              Respondent.

_____

## I.   Introduction

     Charles Kennedy, Jr. ("Kennedy" or "Petitioner"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in state custody in violation of his federal constitutional rights. Petitioner is incarcerated as the result of a judgment entered on June 15, 2009, in New York State County Court, Chemung County (Buckley, J.), following a jury verdict convicting him of two counts of Criminal Possession of a Controlled Substance in the Third Degree (New York Penal Law ("P.L.") §§ 220.16(1), 220.16(12)).

## II.  Factual Background and Procedural History

### A.   Petitioner's Trial

#### 1.   The Prosecution's Case

     On October 28, 2008, in Elmira, New York, narcotics investigator Patrick Griffin ("Inv. Griffin") of the Elmira Police Department ("EPD"), received a phone call from a long-time police informant, King Watkins ("Watkins"). Watkins stated that Petitioner, whom he knew only by the nickname, "Cheese," had been

to Watkins' house earlier that day with a large quantity of cocaine and was going to be returning that night to sell it. Watkins told Inv. Griffin that the prospective buyer, Linda Eygabroat ("Eygabroat"), would be arriving from Corning, New York, in a white truck, and that Petitioner would be driving a white Acura.

At about 11:00 p.m. that night, Inv. Griffin and his partner, Richard Weed ("Inv. Weed"), surveilled Watkins' apartment from an unmarked police car parked nearby. A white truck arrived at about 11:40 p.m.; a white female (Eygabroat) got out and walked to Watkins' house on College Avenue. A white Acura drove up and parked on College Avenue. The driver, a black male (Petitioner), got out of the Acura and walked to Watkins' house.

Watkins testified that once inside his apartment, Petitioner sold Eygabroat an "eight-ball," or one-eighth of an ounce, of what appeared to be cocaine. Petitioner removed the eight-ball from a bag containing numerous other packages of cocaine. After Petitioner and Eygabroat departed, Watkins notified Inv. Griffin by phone of the sale.

Meanwhile, the investigators observed Petitioner return to the white Acura, make a U-turn, and drive past them along College Avenue. Inv. Weed notified officers in marked patrol cars in the vicinity. Officer Jeremy Oakes ("Officer Oakes") pulled Petitioner over a short distance away. Officer Oakes testified that Petitioner was driving the white Acura, and a white female named Shanta Hall

("Hall") was in the passenger's seat. Hall told Officer Oakes that as they were being pulled over, Petitioner gave her a plastic bag containing cocaine and asked her to conceal it. She obliged by stuffing bag down the front of her pants. At Officer Oakes' request, Hall retrieved the bag and turned it over to him. Petitioner then was arrested but Hall was not.

Following Petitioner's arrest, Officer Oakes searched Petitioner and recovered $663 in cash. The police hid this money in a desk drawer at the police station, and then released a narcotics-sniffing dog. The dog immediately scratched on the desk drawer containing the recovered money, signaling to its handler that the money contained traces of cocaine. The contents of the bag recovered from Hall were tested by forensic scientist Julie Romano of the New York State Police, who determined that it contained more than half an ounce of cocaine.

Nora Smith ("Smith"), a friend of Petitioner's, testified that on April 6, 2009, two days prior to Smith's appearance in court, Petitioner called her from jail. Petitioner requested that Smith ask Hall not to come to court in connection with his case, and to inform Watkins that he (Petitioner) would not be in jail for long. Smith identified Petitioner's voice on tape recordings that prison officials had made of their call. After she spoke with Petitioner, Smith called Hall and invited her over, but Hall did not appear.

On April 9, 2009, the jury returned a guilty verdict as to both charges. On June 15, 2009, Petitioner was sentenced as a second felony offender to concurrent determinate prison terms of eight years, followed by three years of post-release supervision.

### B.    Post-Conviction Proceedings

On December 1, 2009, Petitioner moved in Chemung County Court to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. The County Court denied the motion in its entirety on February 18, 2010. See Respondent's Exhibit ("Resp't Ex.") C. The Appellate Division, Third Department, of New York State Supreme Court ("the Appellate Division") denied leave to appeal.

Represented by new counsel, Petitioner pursued a direct appeal of his conviction to the Appellate Division. On November 4, 2010, the Appellate Division unanimously affirmed the conviction. People v. Kennedy, 78 A.D.3d 1233 (Dep't 2010). The New York Court of Appeals denied leave to appeal on May 9, 2011. People v. Kennedy, 16 N.Y.3d 896 (2011).

On August 16, 2011, Petitioner filed a pro se application for a writ of error coram nobis in the Appellate Division, arguing that appellate counsel had been ineffective on various grounds. The Appellate Division summarily denied the application on November 2, 2011, and the Court of Appeals denied leave to appeal on January 31, 2012. See Resp't Exs. K, N, P.

-4-

On December 30, 2011, Petitioner filed a second C.P.L. § 440.10 motion, raising different grounds than he raised in the first C.P.L. § 440.10 motion. The prosecution filed opposition papers, and the County Court denied the motion on April 20, 2012. <u>See</u> Resp't Exs. Q, R, S. On June 22, 2012, the Appellate Division denied leave to appeal. <u>See</u> Resp't Ex. U.

On May 22, 2012, while his leave application from the denial of his second C.P.L. § 440.10 motion was pending, he moved in Chemung County Court to dismiss the indictment for lack of subject matter jurisdiction. On June 28, 2012, the County Court dismissed the motion as frivolous. <u>See</u> Resp't Ex. W. The Appellate Division, on October 9, 2012, denied leave to appeal.

### C.    The Federal Habeas Proceeding

This timely habeas petition followed, in which Petitioner raises the following claims: (1) his trial counsel was ineffective for failing to file a notice of appeal, ask for an adjournment or continuance to investigate the case competently, move to dismiss on the ground that the prosecution failed to establish a chain of custody of the evidence, competently question the prosecution's expert witness at trial regarding the chain of custody and drug testing procedures, and file the proper motions upon receiving the case from the Public Defender's Office; (2) Petitioner was denied a preliminary hearing, denied the right to appear before a grand jury within 24 hours of his arrest, denied counsel at his initial

arraignment, and indicted without being notified that a grand jury was in progress; (3) the prosecutor failed to disclose exculpatory testimony regarding the stop of Eygabroat's vehicle and evidence indicating that drugs delivered by the police to one laboratory weighed more than the drugs that were tested at a second laboratory and then introduced at trial, thereby calling into question the handling, weight, and authenticity of the drugs; and (4) Petitioner was illegally arrested following an improper car stop. See Petition, ¶ 12 (Dkt #1).

Respondent answered the petition (Dkt ##7, 8), interposing the defenses of non-exhaustion and procedural default as to several claims. Respondent alternatively argues that all of the claims are without merit. Petitioner filed a reply brief presenting additional argument regarding the merits of his claims and conclusorily asserting that all of his claims have been fully exhausted. See Petitioner's Reply Brief ("Reply") at 1, 8 (Dkt #11).

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed.

**IV.  Preliminary Matters**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Bennett's petition, filed in 2013. The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct

interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury, 316 F.3d 103, 106 (2d Cir.2003). Here, the Court need not determine whether Kennedy's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims fail even if the Court applies the less deferential, pre-AEDPA standard. Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006).

Furthermore, the Court declines to resolve the issues raised by Respondent's assertion of the defenses of non-exhaustion and procedural default, and instead proceeds directly to consideration of the merits of Kennedy's claims. See Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); Boddie v. New York State Div. of Parole, 288 F. Supp.2d 431, 439 (S.D.N.Y. 2003) ("[P]otentially complex and difficult issues about the various obstacles to reaching the merits [of a habeas petition] should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted).

**V.    Merits of the Petition**

    **A.    Ground One: Ineffective Assistance of Trial Counsel**

        **1.    Legal Principles**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court announced a two-part test to evaluate whether counsel was ineffective: A defendant first must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and second, that "there is a reasonable probability that, absent the errors [by counsel], the fact finder would have had a reasonable doubt respecting guilt." Id. at 687, 695. As discussed further below, the Court finds that all of Kennedy's theories in support of his ineffective assistance of trial counsel claim are without merit under Strickland.

        **2.    Counsel's Alleged Errors**

           **a.    Failure to Investigate**

Petitioner asserts in a conclusory fashion that trial counsel failed to investigate his case competently. In order to assert a colorable claim for the failure to investigate, a "petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation," Taylor v. Poole, 07 Civ. 6318, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 17, 2009) (collecting cases), as counsel is not required "to investigate comprehensively every lead or possible defense,"

<u>Greiner v. Wells</u>, 417 F.3d 305, 321 (2d Cir. 2005) (citations omitted). Here, Petitioner has failed to identify specific areas that his counsel failed to investigate or potentially favorable evidence that his counsel failed to uncover. Thus, he "provides no reason for the court to believe that further investigation would have revealed additional information helpful to his case." <u>Donato v. United States</u>, 09 Civ. 5617, 2012 WL 4328368, at *6 (E.D.N.Y. Sept. 20, 2012); <u>accord Escalante v. Smith</u>, 06 Civ. 1506, 2009 WL 1405440, at *4-5 (N.D.N.Y. May 18, 2009) ("Petitioner's conclusory claim that counsel was ineffective because he failed to investigate or file pretrial motions could not merit granting of the writ because petitioner has failed to suggest any way in which further investigation or motion practice would have provided any benefit to petitioner's defense.") (quoting <u>Miller v. New York</u>, 275 F. Supp. 2d 294, 298-99 (E.D.N.Y. 2003)).

Petitioner's assertion that exculpatory evidence was available is purely speculative. Such speculation does not satisfy either the deficient performance or prejudice prongs of <u>Strickland</u>. <u>See</u>, <u>e.g.</u>, <u>Lamberti v. United States</u>, 95 Civ. 1557, 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998) ("The allegations of failure to investigate or to communicate are vague and conclusory. They do not identify counsel's asserted failings with any specificity or show how any different conduct might have changed the result."), <u>aff'd</u>,

No. 98-2875, 201 F.3d 430 (table), 1999 WL 1212654 (2d Cir. Dec. 10, 1999)).

### b.   Failure to File Motions

Petitioner asserts that his trial attorney was ineffective for failing to file the proper motions upon receiving his case from the Public Defender's Office. As the County Court noted, Petitioner's initial counsel and trial counsel, between them, filed a demand to produce and an omnibus motion, and obtained a <u>Darden</u> hearing, a <u>Mapp</u> hearing, and a <u>Huntley</u> hearing. Petitioner does not indicate which other motions trial should have filed, or how additional motions would have materially assisted his defense. "It is well-established that counsel need not file every conceivable pre-trial motion, but only those 'having a solid foundation.'" <u>United States v. DeFeo</u>, 90 Cr. 250, 1997 WL 3259, at *16 (S.D.N.Y. Jan. 6, 1997) (quoting <u>United States v. Nersesian</u>, 824 F.2d 1294, 1322 (2d Cir. 1987)). As with his failure-to-investigate claim, Petitioner has failed to establish professionally unreasonable conduct by trial counsel in connection with his motion practice, or prejudice resulting therefrom. <u>See</u> <u>id.</u>

### c. Failure to File a Notice of Appeal

Petitioner asserts that his trial attorney was ineffective for failing to file a notice of appeal. As Respondent notes, it is unclear from the record whether trial counsel did or did not file a notice of appeal. Although "[a] lawyer who disregards a

defendant's specific instructions to file an appeal acts in a manner that is professionally unreasonable," no relief is warranted if the "Government can show by clear and convincing evidence that the defendant actually appealed." Garcia v. United States, 278 F.3d 134, 137 (2d Cir. 2002). Thus, even assuming that trial counsel failed to file a notice of appeal, Petitioner was not prejudiced because Petitioner's appellate counsel filed a brief in the Appellate Division, and he received appellate review of his conviction. Relief under Strickland therefore is unwarranted. E.g., Cross v. Superintendent, Wyoming Corr. Fac., 07 Civ. 1158, 2010 WL 5418925, at *3-4 (N.D.N.Y. Nov. 3, 2010).

### d. Failure to Move to Dismiss

Petitioner assigns fault to trial counsel for failing to move to dismiss the indictment on the grounds that the prosecution failed to establish a chain of custody for the seized cocaine and money. As the prosecution argued on direct appeal, there was an adequate chain of custody established for the money and the cocaine. Officer Oakes testified that after the drug-sniffing dog detected cocaine traces on it, he sealed the money in a plastic bag. He did likewise with the cocaine, placing his initials, the date, and the time on the packaging. When shown the bags at trial, Officer Oakes identified one as the seized cash, recognizing his markings still on both ends of the bag and a property tag bearing the case number. When shown the package of drugs, Officer Oakes

recognized his own marking on the package, testifying that after sealing up the package he secured it in the evidence looker. The forensic chemist identified the same package of drugs as was shown to Officer Oakes; she testified it was still in a sealed condition when she began her analysis on it. She recognized her own handwritten marking on the package, which she placed there during her analysis. After completing her work, the chemist re-sealed the package and returned it to a secured vault. In light of the foregoing, there were adequate assurances that the evidence presented at trial was the same evidence recovered by the police in the case.

Morever, as discussed above, in denying Petitioner's second C.P.L. § 440 motion, the County Court held that the prosecution's opposition papers had "provided a satisfactory explanation" of the chain of custody issue based upon the discrepancy between the two weights obtained of the cocaine. Resp't Ex. S at 2. A motion to dismiss premised on the inadequate chain of custody of the seized drugs and money had no reasonable probability of success, and trial counsel therefore was not ineffective in failing to make such a motion. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

####     f.    Ineffective Cross-Examination

Finally, Petitioner asserts that trial counsel was ineffective for failing to properly question the forensic chemist employed by the State Police, regarding the chain of custody and drug testing procedures. "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . strategic in nature' and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting Nersesian, 824 F.2d at 1321). As discussed above, Petitioner's chain-of-custody argument is without merit. With regard to the drug testing procedures, Petitioner fails to indicate any basis for challenging the chemist's testimony outlining her method for ensuring that the drugs were free of tampering before she subjected them to analysis. See T.172-75. Morever, Petitioner has not asserted or established that the substance analyzed by the chemist was anything but cocaine, or that it weighed less than one-half ounce. Petitioner has offered no indication as to what concessions defense counsel should have been able to elicit from the chemist on cross-examination or how counsel could have discredited her methods or conclusions. Petitioner cannot demonstrate prejudice based on pure speculation. See Salcedo v. Artuz, 107 F> Supp.2d 405, 418 (S.D.N.Y. 2000).

-13-

### B.   Ground Two: Pre-Indictment Procedural Violations and Defective Grand Jury Proceedings

#### 1.   Denial of Counsel at Arraignment

Petitioner asserts that he was denied representation by an attorney at his arraignment. In their opposition papers to Petitioner's C.P.L. § 440.10 motion, the prosecution asserted that Petitioner had counsel at his arraignment, namely, an attorney from the Chemung County Public Defender's Office. However, the prosecution did not include the transcript of the arraignment proceedings at that time. Respondent has not produced to this Court a transcript of the arraignment proceedings along with the other state court records he submitted in connection with his answer. Thus, there is no way for this Court to verify whether Kennedy had counsel at his arraignment. Even if he did not, habeas relief does not lie for that omission.

The Sixth Amendment guarantees a criminal defendant the right to counsel at all "'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" Maine v. Moulton, 474 U.S. 159, 170 (1985) (quoting United States v. Wade, 388 U.S. 218, 224 (1967); other quotation and citations omitted)).  The Second Circuit has rejected the argument that "the absence of counsel upon arraignment is an inflexible, per se violation of the Sixth Amendment." United States ex rel. Caccio v. Fay, 350 F.2d 214, 215 (2d Cir. 1965). Rather, it is "the consequences under

-14-

particular state law of a defendant's actions and not the absence of counsel per se determine whether or not a pre-trial stage is critical." Id. at 216. Here, Kennedy "entered a plea of not guilty at his arraignment and thus his plea could have no actual adverse effect on the later stages of the criminal proceedings against him." Id. (citations omitted). It follows that the absence of counsel at Kennedy's arraignment did not result in any prejudice to him. See id. Accordingly, this claim must be dismissed.

## 2. Denial of a Preliminary Hearing

Even assuming, arguendo, that Petitioner was denied a preliminary hearing, he is not entitled to habeas relief on this basis because "'[t]here is no federal constitutional right to a preliminary hearing.'" Caswell v. Racetti, 11-CV-0153(MAT), 2012 WL 1029457, at *5 (W.D.N.Y. Mar. 26, 2012) (quoting Strong v. Mance, No. 9:07-CV-0878-NAM-GHL, 2010 WL 1633398, at *7 (N.D.N.Y. Apr.2, 2010) (citing, inter alia, Gerstein v. Pugh, 420 U.S. 103, 118–19 (1975) ("[W]e adhere to the [this] Court's prior holding that a judicial hearing is not prerequisite to prosecution by information."); other citations omitted)); accord Franklin v. Warren County Dist. Attorney's Office, 08 Civ. 801, 2009 WL 161314, at *5 (N.D.N.Y. Jan. 21, 2009) ("[T]he lack of a preliminary hearing or appearance before the grand jury [does] not implicate federal rights.") (collecting cases). Thus, Kennedy's preliminary hearing claim is not cognizable on federal habeas review.

### 3.    Delay in Arraignment

Kennedy's claim that his arraignment was unconstitutional because it was delayed beyond a 24-hour period does not warrant habeas relief. New York State law holds that a delay of more than 24 hours in arraigning a suspect after a warrantless arrest is presumptively unnecessary and, unless explained, violates C.P.L. § 140.20(1). However, there is no federal analogue to C.P.L. § 140.20(1). Instead, under federal law, arrestees must be arraigned within 48 hours. See Sorensen v. City of N.Y., 98 Civ. 3356, 2000 WL 1528282, at *12 (S.D.N.Y. Oct. 13, 2000) (citing County of Riverside v. McLaughlin, 500 U.S. 44, 63 (1991)). A petitioner whose arraignment has been delayed less than 48 hours "bears the burden of proving the delay was unreasonable before a federal constitutional violation will be deemed to have occurred." Irons v. Ricks, 02 Civ. 4806, 2003 WL 21203409, at *11 (S.D.N.Y. May 22, 2003) (denying habeas petition in the absence of any evidence that 27-hour delay in arraignment was caused by anything other than the need to investigate petitioner's role in several robberies). Here, Kennedy has failed to present any evidence that there actually was a delay. Even if there was a delay, he has presented no evidence to "establish [that] the delay was for reasons other than" the investigation into the crimes for which he was arrested. Id. Thus, Kennedy has failed to bear his burden of

proving that there has been a deprivation of his federal constitutional rights.

### 4. Indictment Absent Notice of a Grand Jury

Kennedy asserts that he was unconstitutionally indicted without being notified that a grand jury was in progress. As Respondent notes, this amounts to a claim that the grand jury proceeding was defective. Such a claim is not cognizable on habeas review. See Lopez v. Riley, 865 F.2d 30, 31-32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court.") (citing United States v. Mechanik, 475 U.S. 66, 70 (1986) (stating that a jury conviction transforms any grand jury defect into harmless error because the trial conviction establishes not only probable cause to indict, but also proof of guilt beyond a reasonable doubt)). Any alleged infirmity in connection with Kennedy's grand jury proceeding was "cured in the trial before the petit jury, which convicted[,]" and therefore "error before the grand jury, if any, was harmless." Lopez, 865 F.2d at 33 (citation omitted).

### C. Ground Three: Brady Violations

#### 1. Legal Principles

Under Brady v. Maryland, 373 U.S. 83 (1963), prosecutors must disclose material evidence that has exculpatory or impeachment

value. See id. at 87. There are thus three elements of a true Brady violation: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Suppressed evidence is deemed "material", and prejudice will be found, if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985); see also Kyles v. Whitley, 514 U.S. 419, 433-34 (1995).

### 2. The Allegedly Withheld Material

Petitioner claims, as he did in his second C.P.L. § 440 motion, see Resp't Ex, Q at 2-3, that the prosecutor failed to turn over the following information that was favorable to the defense: (1) exculpatory testimony by Trooper Jason Sears ("Trooper Sears") and Eygabroat regarding the stop of Eygabroat's vehicle; and (2) evidence indicating that the drugs delivered by the police to one laboratory weighed more than the drugs that were tested at a second laboratory and then introduced at trial.

### a. Testimony Regarding the Vehicle Stop

On cross-examination, Inv. Weed testified that Eygabroat was stopped by a state trooper as she was driving away from Watkins' apartment. Apparently, the prosecutor had not disclosed this

information, and trial counsel argued that this constituted a <u>Brady</u> violation. The trial judge directed that the prosecutor produce one of the troopers who stopped Eygabroat's car, Angelique Heppner ("Trooper Heppner"), along with the police report of the car stop. For medical reasons, Trooper Heppner's partner, Trooper Sears, was unavailable to testify.

Outside the presence of the jury, Trooper Heppner testified that the police did not search Eygabroat or her vehicle and did not recover any cocaine from her person or her vehicle. The trial judge ruled, based on the trooper's testimony and the police report, that there was no <u>Brady</u> violation because no drugs were recovered from Eygabroat and no search was conducted pursuant to the car stop. Thus, there was no exculpatory or impeachment material to disclose. <u>See</u> T.163-65, 203-06. However, the trial judge ruled, the prosecution's failure to turn over the police report from the car stop constituted a state-law discovery violation under <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961). As a sanction, the judge precluded the prosecution from calling Trooper Heppner as a witness.

The trial court's ruling was correct as a matter of federal law because Petitioner has failed to establish a key element of a <u>Brady</u> claim—that the withheld testimony regarding the failure of the State Police to search Eygabroat's car was "material" within the meaning of <u>Brady</u>. Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280 (quotation marks omitted). Petitioner was not charged with the actual sale of cocaine; rather, he was charged with possession of greater than one-half ounce of cocaine with intent to sell it. It was not necessary for the jury to find that a sale took place in order to find that Kennedy possessed the cocaine with intent to sell it. See, e.g., People v. Casio, 186 A.D.2d 412, 412-13 (1st Dep't 1992) ("Although the alleged buyer was not apprehended, it was not necessary for the jury to find that a sale took place in order to find that defendant possessed the drugs with intent to sell. Nor were the alleged sale and the number of vials recovered from defendant the only evidence of intent to sell. In addition, there was defendant's secreting of the drugs in a nearby stash and his dropping the bag containing the drugs upon the approach of the backup team."). Here, the prosecution presented testimony from Watkins, the informant, that Petitioner brought a quantity of cocaine to his apartment and sold some of it to Eygabroat. When Petitioner was detained almost immediately after he drove away from Watkins' apartment, it was found that he had given his passenger, Hall, a package to hold; the package contained 33 individually-packaged bags of cocaine weighing a total of more than one-half ounce. In addition, Petitioner was carrying hundreds of dollars in cash at the time of his arrest. The quantity of, and method of packaging, the cocaine, along with the

large amount of cash Petitioner was carrying at the time of his arrest, demonstrated his intent to sell the cocaine. See People v. Whaley, 70 A.D.3d 570, 571 (1st Dep't 2010) (evidence that defendant was carrying large amount of cash at time of his arrest was probative of essential element of third-degree possession with intent to sell) (citations omitted); People v. Kelly, 261 A.D.2d 133, 134 (1st Dep't 1999) (number and packaging of seized crack cocaine (34 vials) placed within defendant's reach in apartment he shared with seller provided sufficient evidence of intent to sell). Given that the prosecution did not need to prove that an actual sale took place, the troopers' failure to search Eygabroat's car cannot have been material to Petitioner's guilt or innocence. In other words, it is not reasonably probable that the outcome of the trial would have changed had the prosecution disclosed that the police failed to search Eygabroat or her vehicle, or to recover drugs from her. See, e.g., Moses v. United States, 97 Civ. 2833, S90 Cr. 863-01, 1998 WL 255401, at *9 (S.D.N.Y. May 20, 1998) ("Because Petitioner's role in the [narcotics possession] conspiracy was overwhelmingly established by the testimony of his co-conspirators, and the Government presented evidence concerning the surveillance of the transaction. . . the [Brady] material withheld would not have undermined the most essential evidence presented by the Government" and thus "was not material to Petitioner's 'guilt or to punishment.'"). For the same reasons,

Petitioner likewise has failed to establish the "prejudice" element of a Brady claim.

### b.   Drug Analysis Paperwork

Prior to trial, the prosecution disclosed to the defense the police laboratory notes regarding the analysis of the drugs. See Resp't Ex. R, ¶ 8. These notes indicated that 33 individually-packaged quantities of cocaine were placed into a sealed plastic bag by the police, which in turn was placed into a heat-sealed bag at the Western Regional Lab. The cocaine (plus packaging materials) weighed 91.7 grams. The packaged cocaine was transferred to the Southern Regional Lab where it was removed from its packaging and weighed again by the forensic analyst who recorded its weight as 77.509 grams. See id., ¶¶ 9, 11-12. There is no indication that the packaged cocaine was removed from the glassine bags and weighed before its arrival at the Southern Regional Lab. Thus, as the prosecution explained in opposition to Petitioner's second C.P.L. § 440 motion, the packaging materials accounted for the disparity between the weight of 91.7 grams noted on the initial laboratory submission sheet and the weight of 77.509 grams recorded by the forensic analyst. The C.P.L. § 440 court determined that the prosecution had "provided a satisfactory explanation" of how the drugs were handled and analyzed and thereby disposed of Petitioner's claim that the drugs introduced at trial

were not the same drugs that the police recovered. <u>See</u> Resp't Ex. S at 2.

These factual findings by the C.P.L. § 440 court must be presumed correct, absent clear and convincing evidence to the contrary. <u>See</u> 28 U.S.C. § 2254(e)(1). As Respondent argues, Petitioner has failed to offer any proof–apart from the weight discrepancy–that the prosecution intentionally or inadvertently withheld any favorable evidence regarding the weight or authenticity of the drugs. Petitioner's argument pertaining to the laboratory paperwork is based on pure conjecture. "It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief." <u>Mallet v. Miller</u>, 432 F. Supp.2d 366, 378 (S.D.N.Y. 2006) (citing <u>Strickler v. Greene</u>, 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); <u>United States v. Avellino</u>, 136 F.3d 249, 261 (2d Cir. 1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that . . . the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.")). In sum, Petitioner has failed to establish any of the three necessary elements of a <u>Brady</u> claim with regard to the laboratory paperwork documenting the cocaine's weight.

D.     **Ground Four: Illegal Arrest**

Kennedy argues that he was illegally arrested following an improper car stop in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The law is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a contention that evidence recovered through an illegal search or seizure was introduced at trial. Stone v. Powell, 428 U.S. 465, 482 (1976); accord Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002) (citing Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992)). As the Second Circuit has explained, all Stone requires is that the State provide the petitioner with the "opportunity" to litigate a Fourth Amendment claim. McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69-70 (2d Cir. 1983). The Second Circuit has posited that habeas relief for Fourth Amendment claims could be available, however, if the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or if the petitioner was unable to avail himself of the State's corrective procedures "because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70.

Petitioner does not and cannot contend that New York failed to provide appropriate corrective procedures to address his Fourth

Amendment claim. "[T]he federal courts have approved New York's procedure for litigating Fourth

Amendment claims," embodied in C.P.L. §§ 710.20 to 710.70. Capellan, 975 F.2d at 70 n.1 (internal quotation and citations omitted). Petitioner in fact took advantage of these corrective procedures, litigating his Fourth Amendment motion to suppress the drugs recovered after the stop of his car. Following a hearing, the trial court  ruled that the police had reasonable suspicion to stop Petitioner based upon the information supplied by Watkins, which is set forth in further detail, supra. The trial court held that this information, "taken together with [Watkins'] history of providing good information to the police, established his reliability and basis of knowledge," and thus, the evidence seized as a result of the car stop was admissible. See Resp't Ex. Z at 5. Although Petitioner's appellate counsel did not reiterate this Fourth Amendment claim on direct appeal, there was nothing preventing him from doing so.

Moreover, there is no evidence of an "unconscionable breakdown" in the State's corrective process here. See Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988) (An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society."), aff'd, 852 F.2d 59 (2d Cir. 1988).

Petitioner's claim amounts to no more than dissatisfaction with the outcome of the suppression hearing, which is not the equivalent of a "unconscionable breakdown" in the State's corrective procedures. Capellan, 975 F.2d at 71. Thus, even if he "were correct in his allegation that the [trial court] erroneously decided this issue," he "cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." Id. (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978)).

## VI.   Petitioner's Motion For Permission to File Documents

Approximately eight months after he filed his traverse in response to Respondent's opposition papers, Petitioner filed a motion (Dkt #19) for permission to file additional documents in support of his habeas petition. Petitioner states that in his reply, he "made reference to certain trial records and/or other documents" but "failed to include said papers to the Court without any explanation given." Dkt #19 at 1. Petitioner states that he did not have the funds to furnish the Court with these documents. Id. Petitioner does not identify the documents with any further degree of detail. After reviewing Petitioner's reply (Dkt #15), to which Petitioner attached several exhibits, the Court has failed to find reference to any "trial records and/or other documents" in Petitioner's arguments.

As an initial matter, Petitioner's motion is extremely belated. Petitioner's submission of "trial records" would be duplicative, given that Respondent has already submitted the trial transcript and the record on appeal. Petitioner's failure to identify the "other documents" he seeks to submit suggests that this motion is a dilatory litigation tactic. Accordingly, Petitioner's motion (Dkt #19) is denied with prejudice.

## VII. Conclusion

The application for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed. Petitioner's motion for permission to file documents (Dkt #19) is denied with prejudice. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 27, 2014
           Rochester, New York